**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| IN RE: | : | Chapter 13 |
| MICHELLE A. VEALE, | : | Case No. 21-10418-BLS |
| Debtor. | : | |
| STRATEGIC FUNDING SOURCE, INC., | : | Adv. Proc. No. 21-50486-BLS |
| Appellant, | : | |
| v. | : | Civ. No. 21-1751-RGA |
| MICHELLE A. VEALE, | : | |
| Appellee. | : | |

**MEMORANDUM OPINION**

Sean A. Meluney, Matthew D. Beebe, Benesch, Friedlander, Coplan & Aronoff LLP, Wilmington, DE, attorneys for appellant Strategic Funding Source, Inc.

Peter K. Schaeffer, Jr., Avenue Law, Dover, DE, attorney for appellee Michelle A. Veale.

October 25, 2022



**ANDREWS, UNITED STATES DISTRICT JUDGE:**

This case arises from appellant Strategic Funding Sources $230,000.00 loan at 39% interest to a now defunct business owned by appellee-debtor Michelle A. Veale. Ms. Veale guaranteed the debt. Her business later declared bankruptcy, reorganized, and ultimately failed again. Before the Court is Strategic's appeal (D.I. 1) from the Bankruptcy Court's Opinion, *In re Veale*, 2021 WL 5614923 (Bankr. D. Del. Nov. 30, 2021), and accompanying Order (Adv. D.I. 18) (A226)[1] ("Dismissal Order"), which dismissed with prejudice Strategic's Complaint asserting that Ms. Veal's personal guarantee of the business debt is nondischargeable under various provisions of 11 U.S.C. § 523. The merits of the appeal are fully briefed. (D.I. 13, 15, 16).[2] For the reasons set forth below, the Dismissal Order is affirmed.

## I. BACKGROUND

### A. The Complaint

The Complaint (A006-A100) ("Compl.") alleges the following facts:

1. On or about April 11, 2017, Ms. Veale (the "Debtor") executed a loan agreement with Strategic in her capacity as owner of Retro Home Health Care Services, as Borrower, and in her individual capacity, as Guarantor. (*See* Compl. ¶ 12 (A008) & Ex. A (A031-A049) (the "Loan Agreement")).

2. The Loan Agreement provided that Strategic would provide Retro with a loan in the principal amount of $230,000.00, and Retro promised to pay Strategic the "Repayment

---

[1] The docket of the adversary proceeding, captioned Strategic Funding Source, Inc. v. Michelle A. Veale, Adv. No. 21-50486-BLS (Bankr. D. Del.), is cited herein as "Adv. D.I. __." The appendix (D.I. 14) filed in support of Strategic's opening brief (D.I. 13) is cited herein as "A__."

[2] I did not hear oral argument because the facts and legal arguments are adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument.

Amount" of $319,700.00 (consisting of principal in the amount of $230,000.00 and interest in the amount of $89,700.00) in 52 weekly payments of $6,152.80 each, reflecting an effective interest rate of approximately 39 percent. (Compl. ¶ 14).

3. The Debtor personally guaranteed Retro's payment and performance under the Loan Agreement. (Compl. ¶ 13).

4. Prior to finalizing the Loan Agreement and advancing the funds, Strategic recorded a telephone call with the Debtor in which Strategic asked the following questions:

> Q: Have you been planning to file or do you know of any reason to believe that your business will need to file for bankruptcy protection in the foreseeable future?
>
> A: No, no I don't.
>
> Q: Do you currently have a balance with any other merchant cash advance provider?
>
> A: No.

5. On or about April 13, 2017, Strategic advanced the loan amount, less fees (the "Funds"). (Compl. ¶ 15).

6. Pursuant to instructions by Retro and the Debtor, Strategic paid $101,327.81 of the Funds directly to creditor Provider Web Capital to satisfy a balance owed by Retro and the Debtor. (Compl. ¶ 16).

7. From April 17, 2017 through May 15, 2017, Strategic received five payments from Retro's bank account totaling $30,764.00. (Compl. ¶ 17).

8. On or about May 22, 2017 and May 30, 2017, Strategic attempted to draft the next two payments from Retro's bank account, but both payments were rejected and failed to clear.

9. From May 25, 2017 through July 14, 2017, Strategic made numerous attempts to contact Retro and the Debtor to address the "stop payment" on the account and the outstanding balance under the Loan Agreement, but neither Retro nor the Debtor returned Strategic's calls.

(Compl. ¶ 20).

10. On July 17, 2017, Retro filed a chapter 11 bankruptcy case (the "Retro Bankruptcy") in the United States Bankruptcy Court for the Southern District of Indiana (the "Indiana Bankruptcy Court"). (Compl. ¶ 21).

11. Retro paid Strategic nine monthly adequate protection payments of $1,000.00 each pursuant to the Final Order Authorizing Use of Cash Collateral entered by the Indiana Bankruptcy Court. (Compl. ¶ 22).

12. On August 2, 2018, Retro's chapter 11 plan was confirmed, and on November 8, 2018, Strategic received payment of $5,099.41. (Compl. ¶ 23).

13. The Loan Agreement required the entire balance owed to Strategic to be paid by April 2018. (Compl. ¶ 25). When the Debtor failed to make any payments under the personal guarantee, on May 18, 2018, Strategic filed a complaint against the Debtor in the Circuit Court of the County of Hanover, Virginia (the "Virginia State Court") alleging claims of breach of contract and fraud. (Compl. ¶ 26 & Ex. B (A050-A097)).

14. The Debtor failed to appear in the Virginia State Court, and Strategic obtained a default judgment against the Debtor on July 17, 2018 for more than $300,000.00, including principal of $230,000.00, a default fee of $2,500.00, unpaid interest of $51,486.00, attorney's fees of $16,500.00, plus interest at the judgment rate of 6% per annum and any and all court costs. (Compl. ¶¶ 27-28 & Ex. C (A098-A100)).

15. On February 18, 2021, the Debtor filed a Chapter 13 bankruptcy case before the Bankruptcy Court for the District of Delaware.

The Complaint contains four counts, each seeking a declaration that the Debtor's guarantee is nondischargeable pursuant to various subsections of Bankruptcy Code § 523. Generally, Strategic alleges that the Debtor made the following misrepresentations at the time the loan was

made (the "Alleged Misrepresentations"):

(1) Retro and the Debtor were not insolvent;

(2) Retro and the Debtor's financial conditions were such that Retro would not need to file bankruptcy in the "foreseeable future";

(3) the assets subject to the security agreement were free from any liens, security interests or other encumbrances that would be superior or adverse to Strategic;

(4) Retro and the Debtor would fulfill the obligations under the Loan Agreement by allowing Strategic to draft the agreed payments from one designated bank account and provide Strategic with irrevocable access to the account for repayment;

(5) Retro and Debtor would deposit all receivables into the bank account;

(6) Retro's financial information was accurately reflected in documents and information produced to Strategic;

(7) Retro intended to use the funding for business purposes rather than personal, family, or household purposes;

(8) the Debtor intended to guarantee full and prompt performance of all obligations;

(9) neither Retro nor the Debtor were in arrears with any of their creditors;

(10) Retro was in good standing under all applicable laws under which Retro operates; and

(11) neither Retro nor the Debtor had or would have an outstanding balance with any other merchant cash advance provider.

**B. The Motion to Dismiss**

The Debtor filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), made applicable to adversary proceedings in bankruptcy under Federal Rule of Bankruptcy Procedure 7012(b), on the basis that the facts alleged in the Complaint did not support claims for

fraud or other grounds that would prevent the discharge of her guarantee obligations. The Debtor asserted that the facts establish only that the small business she owned was struggling and took on a high interest loan from Strategic, which she guaranteed. Retro made payments on the loan, but then defaulted and filed a chapter 11 bankruptcy case. The Debtor contended that the facts of this case are no different from any other business lending transaction in which a borrower cannot pay and seeks protection under the Bankruptcy Code. The Debtor sought dismissal of the Complaint with prejudice. (*See* A127, A130, A165). Strategic's response to the motion to dismiss (A136-152) argued that the Complaint sufficiently pled facts in support of the asserted claims, and the record reflects that Strategic did not seek leave to amend the Complaint either in its response or during oral argument (A169-203).

### C. The Opinion and Order

Following briefing and oral argument, the Bankruptcy Court issued the Opinion and Order dismissing Strategic's Complaint on the basis that "the Complaint fails to allege facts that support plausible claims for nondischargeability under § 523(a)(2), (4) or (6)"[3] and further holding that dismissal without leave to amend was appropriate because the "factual allegations evince a business loan that went sour, nothing more." *In re Veale,* 2021 WL 5614923, at *1, *10 n.70. On December 14, 2021, Strategic filed a timely notice of appeal. (D.I. 1).

## II. JURISDICTION AND APPLICABLE STANDARDS

The Court has jurisdiction to hear an appeal from a final judgment of the Bankruptcy Court pursuant to 28 U.S.C. § 158(a)(1). In reviewing the bankruptcy court's determinations, this Court "review[s] the bankruptcy court's legal determinations *de novo,* its factual findings for clear error and its exercise of discretion for abuse thereof." *See In re Trans World Airlines, Inc.*, 145 F.3d

[3] Dismissal of Strategic's claim for a nondischargeability determination under § 523(a)(4) is not at issue in this appeal. (*See* D.I. 13 at 38-39 n. 11).

124, 130 (3d Cir. 1998).

This Court reviews the dismissal *de novo* and the decision to do so with prejudice for abuse of discretion. *See Langford v. City of Atlantic City*, 235 F.3d 845, 847 (3d Cir. 2000) ; *Lorenz v. CSX Corp*., 1 F.3d 1406, 1414 (3d Cir. 1993).

The Bankruptcy Code is designed to give "a fresh start [to] the honest but unfortunate debtor," and exceptions to discharge are narrowly construed. *Marrama v. Citizens Bank*, 549 U.S. 365, 367 (2007). A complaint seeking an exception to discharge is assessed in three steps: First, the Court must "tak[e] note of the elements a plaintiff must plead to state a claim." *Burtch v. Milberg Factors, Inc*., 662 F.3d 212, 221 (3d Cir. 2011). It identifies allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* Finally, "where there are well-pleaded factual allegations," the Court "assume[s] their veracity and then determine[s] whether they plausibly give rise to an entitlement for relief." *Id.* Because Strategic's claims (with the exception of those arising under § 523(a)(6)) all allege fraudulent conduct, its claims must be plead with particularity. Fed. R. Civ. P. 9 (made applicable to this adversary proceeding pursuant to Fed. R. Bankr. P. 7009(b)).

## III. ANALYSIS

"Dischargeability exceptions are narrowly construed." *Balascio v. Leitzke (In re Leitzke)*, 2014 WL 3583706, *3 (Bankr. D. Del. July 18, 2014). Courts have recognized that "the reasons for denying a discharge must be real and substantial, not merely technical and conjectural." *Kapitus Serv., Inc. v. Polk (In re Polk)*, 2020 WL 762215, *2 (Bankr. M.D. Ga. Feb. 14, 2020) (cleaned up). "A narrow construction is warranted given that one of the fundamental policies underlying the Bankruptcy Code is to permit honest debtors to reorder their financial affairs and obtain a 'fresh start,' unburdened by the weight of preexisting debt." *Leitzke*, 2014 WL 3583706, at *3. A creditor objecting to the discharge of debts bears the burden of proof. *Id.*

**A. COUNT I – Nondischargeability of Debt Pursuant to § 523(a)(2)(A)**

The Bankruptcy Court concluded that Count I of Strategic's Complaint does not meet the plausibility standard for claims under § 523(a)(2)(A). Section 523(a)(2)(A) provides that an individual's debt will not be discharged to the extent that the debt was obtained by "false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." 11 U.S.C. § 523(a)(2)(A).[4] To prevail on a claim of nondischargeability under § 523(a)(2)(A), a creditor must generally prove that:

> (1) the debtor obtained money, property or services through a material misrepresentation; (2) the debtor, at the time, knew the representation was false or made with gross recklessness as to its truth; (3) the debtor intended to deceive the creditor; (4) the creditor reasonably relied on the debtor's false representations; and (5) the creditor sustained a loss and damages as a proximate result of the debtor's materially false representations.

*In re Bocchino*, 794 F.3d 376, 380-81 (3d Cir. 2015) (citation and emphasis omitted).

When pleading fraud, the Complaint must allege the particularity of the circumstances constituting the fraud—"the who, what, when, where, and how of the events at issue." *Charles Kapish v. April Cruz-Brewer (In re Cruz-Brewer)*, 609 B.R. 1, 10 (Bankr. M. D. Pa. 2019) (citing *In re Rockefeller Ctr. Prop., Inc. Sec. Litig.*, 311 F.3d 198, 217 (3d Cir. 2002)); Fed. R. Civ. P. 9(b) (applicable pursuant to Fed. R. Bankr. P. 7009).

The Bankruptcy Court correctly noted that only four of the Alleged Misrepresentations relate to the Debtor's guarantee debt: (1) the Debtor was not insolvent; (8) the Debtor intended to guarantee full and prompt performance of all obligations; (9) the Debtor was not in arrears with any of her creditors; and (11) the Debtor did not have an outstanding balance with any other

---

[4] "Although the terms 'false pretenses,' 'false representation,' and 'actual fraud' refer to different concepts, they are closely related and each requires a plaintiff to demonstrate 'proof of false or deceptive conduct, fraudulent intent, and justifiable reliance.'" *In re Altieri*, 2012 WL 3595298, *2 (Bankr. D. N.J. Aug. 20, 2012) (citing *In re Neale*, 440 B.R. 510, 521 (W.D. Wis. 2010)).

merchant cash advance provider. The remaining Alleged Misrepresentations are specific to Retro. As § 523(a)(2)(A) does not apply to statements about a debtor's financial condition (which are covered by § 523(a)(2)(B)), the Bankruptcy Court concluded that its inquiry was limited to Alleged Misrepresentation (8)—that is, whether the facts alleged in the Complaint support a plausible claim that the Debtor falsely represented her intent to guarantee Retro's obligations. The Bankruptcy Court noted that, in a similar case, the Bankruptcy Court for the Middle District of Georgia explained:

> The test may be stated as follows. If, at the time he made his promise, the debtor did not intend to perform, then he made a false representation (false as to his intent) and the debt that arose as a result thereof is not dischargeable (if the other elements of § 523(a)(2)(A) are met). If he did so intend at the time he made his promise, but subsequently decided that he could not or would not perform, then his initial representation was not false when made.

*In re Polk,* 2020 WL 762215, *7 (citations and emphasis omitted).

The Bankruptcy Court correctly identified the two particularized allegations that could support Strategic's claim that the Debtor falsely represented her intent to guarantee Retro's obligations: (i) the Debtor made no payments after Retro's bankruptcy, and (ii) the Debtor did not appear in Virginia (a state she has never lived in) to contest Strategic's lawsuit to recover its debt. (Compl. at ¶¶ 24-28). The question is whether those two allegations merit an inference that the Debtor never intended to honor her guarantee. To make such an inference, the Court must conclude that since fact one happened, fact two also likely happened. A "fact [must] make a second fact more probable than not." *Brick v. Conti*, 572 B.R. 73, 78 (Bankr. W.D.N.Y. 2017). In the context of fraud, this means that a court "simply cannot infer fraudulent intent from conduct that is equally susceptible to a more innocent interpretation." *In re Contella*, 166 B.R. 26, 31 (Bankr. W.D.N.Y. 1994).

Allegations of nonpayment, without more, cannot support a claim that the Debtor knowingly made a false representation at the time she guaranteed the loan. *In re Giarratano*, 299 B.R. 328, 336 (Bankr. D. Del. 2003). "A debtor's statement of future intention is not necessarily a misrepresentation if intervening events cause the debtor's future actions to deviate from previously expressed intentions." *In re Polk,* 2020 WL 762215, at *7 (quoting 4 Collier on Bankruptcy ¶ 523.08[1][d] (16th ed. 2021)). Thus, allegations that the Debtor did not write any personal checks to satisfy Strategic and did not appear in Virginia to contest Strategic's claim are insufficient to support an inference that the Debtor falsely represented her intent to guarantee the loan from Strategic at the time the debt was incurred.

On appeal, Strategic argues that the Third Circuit permits intent to perform to be "inferred from the totality of the circumstances" and may be satisfied by circumstantial evidence and the Debtor's "reckless indifference or reckless disregard" for the truth. *See In re Bocchino*, 794 F.3d at 381. According to Strategic, the Bankruptcy Court failed to consider allegations related to Retro in the totality of the circumstances regarding the Debtor's intent to perform at the time she entered into the Loan Agreement and Guaranty. But the Bankruptcy Court did consider the Alleged Misrepresentations made with respect to Retro and concluded that they did not support claims under § 523(a)(2)(A) either:

> Alleged Misrepresentations (4) and (5) assert that the Business and the Debtor falsely represented that SFS would have "irrevocable access" to a designated bank account to collect repayments, and that the Business's receivables would be deposited into that account. The Complaint alleges that SFS collected five payments from the Business's bank account, but thereafter was blocked from the account. Without more, the allegations of nonpayment fail to plausibly support a claim of misrepresentation when the loan was made.
>
> Further, [there] are no factual allegations to plausibly support a claim that the Debtor (or Business) misrepresented the intent to use the Funds for anything other than Business purposes [Alleged Misrepresentation (7)] or that the Business was not in good standing [Alleged Misrepresentation (8)].

*In re Veale*, 2021 WL 5614923, at *5. I agree that the allegations regarding nonpayment and the bare allegation concerning Retro's misrepresented good standing (a written statement, which is discussed further below), considered in the totality of the circumstances, are insufficient to support an inference that the Debtor never intended to honor her guarantee at the time the debt was incurred. The alleged conduct is equally susceptible to a more innocent interpretation—that the Debtor intended to honor her obligations and repay Strategic but her business failed.

**B. COUNT II – Nondischargeability of Debt Pursuant to § 523(a)(2)(B)**

The Complaint alleges in Count II that the Debtor's guarantee is nondischargeable under Bankruptcy Code § 523(a)(2)(B). Elements of nondischargeability under § 523(a)(2)(B) are:

> (B) use of a statement in writing—
>
> (i) that is materially[5] false;
>
> (ii) respecting the debtor's or an insider's financial condition;
>
> (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and
>
> (iv) that the debtor caused to be made or published with intent to deceive.

11 U.S.C. § 523(a)(2)(B). "The text of § 523(a)(2) plainly heightens the bar to discharge when the fraud at issue was effectuated via a 'statement respecting the debtor's financial condition.'" *In re Veale*, 2021 WL 5614923 at *6. "The heightened requirements, moreover, are not a shield for dishonest debtors," the Bankruptcy Court observed. *Id.* "Rather, they reflect Congress' effort to balance the potential misuse of such statements by both debtors and creditors." *Id.* As the Supreme Court has explained:

> The House Report on the Bankruptcy Reform Act of 1978 suggests that Congress wanted to moderate the burden on individuals who submitted false financial statements, not because lies about financial condition are less blameworthy than

[5] "Materiality is ordinarily an issue left to the factfinder and is therefore not typically a matter for Rule 12(b)(6) dismissal." *In re Adams Golf, Inc. Sec. Litig.*, 381 F.3d 267, 274 (3d Cir. 2004).

> others, but because the relative equities might be affected by practices of consumer finance companies, which sometimes have encouraged such falsity by their borrowers for the very purpose of insulating their own claims from discharge.

*Lamar, Archer & Cofrin, LLP v. Appling*, 138 S. Ct. 1752, 1763 (2018) (cleaned up). As with § 523(a)(2)(A), intent to deceive under § 523(a)(2)(B) "can be inferred from the totality of the circumstances, including the debtor's reckless disregard for the truth." *In re Cohn,* 54 F.3d 1108, 1118-19 (3d Cir. 1995).

The Bankruptcy Court found that the Complaint failed to plead any facts to support an inference that the Debtor made written misrepresentations about her individual financial condition or intended to deceive Strategic in connection with the guarantee. *In re Veale*, 2021 WL 5614923 at *6-7. Strategic argues on appeal that a claim under § 523(a)(2)(B) includes false statements about the financial condition of an "insider" of the debtor as well. The Bankruptcy Code defines "insider" with respect to an individual debtor to include a "corporation of which the debtor is a director, officer, or person in control." 11 U.S.C. § 101(31)(A)(iv). It is undisputed that the Debtor was, at all relevant times, a person in control of Retro.

Strategic cites the *In re Rodi* case from the Northern District of Illinois, which, like this case, considered application of § 523(a)(2)(B) to statements made about the financial condition of an insider in connection with a loan and personal guaranty. 163 B.R. 1017, 1023 (N.D. Ill. 1994). There, a chapter 7 debtor was the director and president of a boat dealership. *Id.* at 1018. The dealership sought financing from a lender, but the lender refused to provide financing unless the debtor executed a personal guaranty. *Id.* at 1019. The dealership's financing application contained a representation that there were no pending lawsuits against the dealership that could adversely affect the dealership's financial condition. *Id.* However, the debtor knew, and failed to inform the lender, that the dealership's mortgage holder had commenced foreclosure proceedings against the dealership. *Id.*; *see also id.* at 1022. The lender in that case asserted that the debtor's

debt under the financing agreement and personal guaranty was nondischargeable under Bankruptcy Code §§ 523(a)(2)(A) and (B). *Id.* at 1020. The district court rejected the debtor's argument that the statement was not false under § 523(a)(2)(B) because it was made about the dealership's financial condition, not the individual debtor's financial condition. *See id.* at 1022-23. The court found that the debtor's argument "ignores the plain language of § 523(a)(2)(B)" and held that "[s]ince [debtor] is the director and president of [the dealership], this statement respecting [the dealership's] condition is actionable under § 523(a)(2)(B)." *Id.* at 1023; *see also* 4 Collier on Bankruptcy ¶ 523.08[2][c][i] (16th ed. 2021) ("The definition of 'insider' becomes of critical importance because, if the debtor makes a false statement … respecting the financial condition of a corporation of which the debtor is a director, officer or person in control, the exception of section 523(a)(2)(B) is operative. Nor does it matter whether the money, property, services or credit was obtained for the debtor or for another; what is important is that the statement be false respecting the debtor's financial condition or respecting the financial condition of an 'insider.'").

Strategic argues that the Bankruptcy Court erred in disregarding the Debtor's alleged misrepresentations regarding Retro's financial condition in its analysis of claims under § 523(a)(2)(B). But the Opinion reflects that the Bankruptcy Court considered all of the Alleged Misrepresentations, including those concerning Retro's financial condition. *In re Veale*, 2021 WL 5614923, at *6-7. While the Opinion highlights that none of the alleged written misrepresentations concerned the Debtor's individual financial condition, and thus did not support a plausible claim for nondischargeability of the guarantee debt under § 523(a)(2)(B), the Bankruptcy Court also found that the specific Alleged Misrepresentations concerning Retro contained in "the pre-printed loan agreement" appeared to be " 'technical and conjectural' rather than substantial reasons for asserting nondischargeability because the Complaint lacks factual

allegations showing that any of the statements were made with an 'intent to deceive.'" *Id.* at *6 (quoting *In re Polk*, 2020 WL 762215, at *2).

As alleged in the Complaint, the Debtor made the following written misrepresentations contained in the pre-printed Loan Agreement: (i) that neither the Debtor nor Retro is insolvent or anticipates that a voluntary or involuntary bankruptcy petition will be filed (Compl. ¶ 39; Loan Agreement § 2.7); (ii) that Retro "has good and marketable title to all assets, free and clear of any and all liabilities, liens, … security interests, … and encumbrances of any kind or nature whatsoever … that may be inconsistent with the transactions contemplated with, or adverse to the interests of [Strategic]" (Compl. ¶ 39; Loan Agreement § 2.9); (iii) that the financial statements provided to Strategic "fairly represent the financial condition of [Retro] and [Debtor] at such dates" (Compl. ¶ 39; Loan Agreement § 2.1); and (iv) that "[a]ll information provided by [Retro] and [Debtor] to [Strategic] in this [Loan] Agreement …, is true, accurate and complete in all respects" (Compl. ¶ 39; Loan Agreement § 2.14). Strategic argues that these misrepresentations, taken as a whole or individually, constitute a basis to find that the Debtor has made written statements that are materially false respecting her financial condition or the financial condition of an insider, with the intent to deceive Strategic.

Alleged Misrepresentations (1) and (2), based on Section 2.7 of the Loan Agreement, assert that the Debtor falsely represented that Retro and the Debtor were not insolvent and that neither anticipated filing for bankruptcy.[6] Strategic asserts that the timing of Retro's default (one month after receiving the loan), and Retro's bankruptcy filing (three months after receiving the loan), create an inference that the Debtor's statements in Section 2.7 were false. However, the

[6] I do not consider the Alleged Misrepresentations made during a telephone phone call between the Debtor and Strategic for several reasons, including that any such statements do not fall under § 523(a)(2)(B) which pertains only to the "use of a statement in writing." 11 U.S.C. § 523(a)(2)(B).

timing alone, without more, is insufficient raise a plausible inference of an intent to deceive Strategic. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of entitlement to relief." *Twombly*, 550 U.S. at 544 (internal punctuation omitted). There are no particularized pleadings suggesting that the Debtor or Retro was considering a bankruptcy, and the record suggests the contrary. The Debtor didn't file for bankruptcy until years after. Retro didn't hire its bankruptcy counsel or file for bankruptcy until months after the Loan Agreement, and, in the meantime, it continued making payments. There are no allegations that Retro wasn't paying its employees or vendors in the ordinary course of business. The Alleged Misrepresentations are insufficient to support a plausible claim that the Debtor intended to deceive Strategic as to an anticipated bankruptcy.

Alleged Misrepresentation (3) is the Debtor's representation in Section 2.9 of the Loan Agreement that the assets subject to the security agreement were free from any liens, security interests or other encumbrances, despite there being liens on some of Retro's assets. As the Debtor correctly points out, the Loan Agreement states only that: "Borrower has good and marketable title to all assets, free and clear of any and all liabilities, liens, claims [and] encumbrances of any kind or any other rights or interests that may be inconsistent with the transactions contemplated with, or adverse to the interests of, [Strategic]." (A039). The facts alleged in the Complaint show that Strategic received a lien, which entitled Strategic to adequate protection payments in Retro's Chapter 11 case. There is no hint that any underlying liens are inconsistent with Strategic's interests, and Strategic conceded as much in the Bankruptcy Court: "Plaintiff acknowledges that the language of the Security Agreement does not expressly state that Plaintiff have a superior position over Defendant's assets." (A146). At bottom, nothing in the Complaint supports a plausible claim that the Debtor intended to deceive Strategic with respect to "liens inconsistent with Strategic's interests" at the time she signed the Loan Agreement.

Accordingly, Alleged Misrepresentation (3) is insufficient to state a plausible claim under § 523(a)(2)(B).

Alleged Misrepresentations (6) and (10) assert that the Debtor falsely represented that all information provided by the Debtor and Retro in the Loan Agreement and Guaranty "is true, accurate and complete in all respects" and that Retro was in good standing "under the laws of the jurisdictions in which it is organized and/or operates." According to Strategic, Retro was not in good standing under applicable law based on a "large repayment it owed to Medicaid, and a large assessment from the Department of Labor ("DOL") for unpaid overtime" as supported by Retro's bankruptcy schedules, which were attached to the Complaint. Because these debts were foreseeable to Retro and the Debtor, Strategic argues, they support a claim for fraud based on a material nondisclosure. But whether or not the Debtor was "aware that the Medicaid repayment . . . and the [DOL] assessment . . . were due or would likely be coming due soon," as Strategic alleges, the Loan Agreement did not call for this specific information to be disclosed. Accepting as true that Retro owed payments, or would likely owe payments in the future, does not alone equate to lack of "good standing" under state law. The allegations fall short of supporting a plausible claim that the Debtor made a false statement.

Alleged Misrepresentations (9) and (11) assert that the Debtor falsely represented that neither Retro nor the Debtor were in arrears with any creditor and that neither would have an outstanding balance with any other merchant cash advance provider. Section 2.8 of the Loan Agreement simply provides that the Borrower (Retro) would not enter into any financing agreement without the written permission of Strategic. The language does not address the Debtor's individual financial condition or the guarantee. In the relevant financial statement attached as Exhibit B to the Complaint, the Debtor lists a current debt obligation of $100,000 as a liability and states that Retro's purpose for the loan was "consolidation." (*See* A111; A178).

Strategic honored Retro's request to pay almost 50% of the loan principal directly to Retro's creditors. The bare allegation that Strategic was deceived by the Debtor, based on the preprinted language of the Loan Agreement, is not sufficient to support a plausible claim of fraud.

In sum, I agree with the Bankruptcy Court that the facts alleged in the Complaint do not support any plausible claims under § 523(a)(2)(B) based on the Alleged Misrepresentations concerning either the Debtor's individual financial condition or that of Retro.

**C. COUNT 3 – Nondischargeability of Debt Pursuant to § 523(a)(6)**

Section 523(a)(6) provides that an individual debtor will not receive a discharge from any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). "The word 'willful' in (a)(6) modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998) (emphasis omitted).. A knowing breach of contract will not ordinarily rise to the level of "willful and malicious." *Norm Gershman's Things to Wear, Inc. v. Peterson (In re Peterson)*, 332 B.R. 678, 682 (Bankr. D. Del 2005); *see also GMAC Inc. v. Coley (In re Coley)*, 433 B.R. 476, 499 (Bankr. E. D. Pa. 2010) ("An intentional breach of contract is excepted from discharge under § 523(a)(6) only when it is accompanied by malicious and willful tortious conduct." (quoting *Mitsubishi Motor Sales of Caribbean, Inc. v. Ortiz*, 418 B.R. 11, 25 (D. P.R. 2009)). "A breach of contract is not 'willful and malicious conduct' under § 523(a)(6) unless accompanied by conduct that would give rise to a tort action under state law." *Lockerby v. Sierra*, 535 F.3d 1038, 1042 (9th Cir. 2008) (deciding that an attorney's intentional breach of a settlement agreement of the former client's malpractice claims involved "ordinary debt" and was not tortious under Arizona state law and, therefore, was not "willful and malicious" under § 523(a)(6)). The Bankruptcy Court determined that the allegations contained in the Complaint asserted nothing more than an intentional breach of

contract, and as such, the allegations did not support a plausible claim for nondischargeability under § 523(a)(6). *In re Veale*, 2021 WL 5614923, at *8.

Strategic puts forth no discernible error on appeal. Strategic repeats its allegations that the Debtor and Retro misrepresented their anticipation of bankruptcy and their promise to deposit sufficient funds to make the agreed payments. "Notwithstanding those representations, the Debtor blocked Strategic from accessing the account and cut Strategic off from collecting payments due under the Loan Agreement." (D.I. 13 at 38). According to Strategic, "The Debtor's actions were intentional, without just cause or excuse, and [were] substantially certain to produce harm to Strategic," and, therefore the Complaint pleads "a plausible claim for nondischargeability under Section 523(a)(6) for willful and malicious injury." *Id.* The allegations contained in the Complaint assert nothing more than an intentional breach of contract, and I see no basis to disturb the Bankruptcy Court's determination.

**D. Dismissal With Prejudice**

The record reflects that Strategic did not seek leave to amend the Complaint to cure infirmities either in its response or during oral argument, and instead chose to rely upon the sufficiency of the allegations raised in the Complaint. (*See* A136-152; A169-203). Strategic essentially contends that the Bankruptcy Court abused its discretion in not granting *sua sponte* relief that Strategic failed to even seek. This is not the law. As the Third Circuit has clarified, there is no requirement, outside of civil rights cases, that district courts must *sua sponte* grant leave to amend before dismissing a complaint for failure to state a claim. *See Fletcher-Harlee Corp. v. Pote Concrete Contractors*, 482 F.3d 247, 252 (3d Cir. 2007).

Leave to amend should be "freely given" in the absence of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the

amendment, futility of amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962). In dismissing the Complaint with prejudice, the Bankruptcy Court cited its prior discussion of the "high bar for asserting plausible nondischarageability claims," and concluded that "dismissal without leave to amend was warranted here" as the "factual allegations evince a business loan that went sour, nothing more." *In re Veale*, 2021 WL 5614923 at *1. Strategic argues that the Bankruptcy Court erred by holding that any amendment of the complaint would be futile as a matter of law. (D.I. 13 at 17). Conversely, the Debtor argues that the Bankruptcy Court properly dismissed the Complaint with prejudice based on the incongruence between the particularized facts and the conclusions drawn from them. "It's not that the pleadings were imprecise, it's that what the Appellant says happened doesn't support its claims. In other words, where the money came from, why it was supplied, where the money went after the company received it, and what the creditor received in exchange for it have all been pled and it is not enough." (D.I. 15 at 29).

"A claim is not futile merely because it will be difficult to prove. In other words, the claim must be futile as a matter of law rather than merely unlikely as a matter of fact. The issue involved in a motion to dismiss is not whether the plaintiff will ultimately prevail but whether he is entitled to present evidence in support of his claims." *In re PMTS Liquidating Corp.*, 490 B.R. 174, 184 (D. Del. 2013) (citations and internal quotation marks omitted). I agree, however, that even assuming Strategic had properly requested leave to amend, and presented the Bankruptcy Court with the additional allegations presented in its appellate briefs, amendment here would be futile. The appeal asserts no new allegations that would merit rethinking the Bankruptcy Court's conclusion. Strategic proposes amendments based on information contained in Retro's chapter 11 Plan ("Retro Plan"), a proof of claim filed by the DOL ("DOL POC"), and Retro's July 2017 monthly operating report ("MOR"). These documents were not addressed in the Complaint, but according to Strategic, the DOL POC and Retro Plan provide support for Strategic's allegation

that the Debtor knew that Retro was liable for the DOL assessment a month prior to entering into the Loan Agreement. (*See* A313-24 (DOL POC); A347 (Retro Plan)). According to Strategic, the Debtor's statement in the Retro Plan that she took out a loan "in hopes of keeping the company from dissolving" further supports that Retro was contemplating bankruptcy at the time it entered into the Loan Agreement. (A347). Strategic asserts that it would add allegations related to those documents if permitted to amend the Complaint, and that those allegations may be sufficient to state a claim for nondischargeability under § 523(a)(2)(A).

Strategic's allegation that the Debtor was aware of the DOL assessment at the time of the loan has already been asserted. "Defendant took out the Loan with Plaintiff fully aware that it would be hit with DOL assessments that it would not be able to pay." (A146). That the loan proceeds were used for personal expenses like fast food has already been pled as well. And if re-pled, neither would make a difference in supporting a plausible claim that the Debtor had no intention of fulfilling the guaranty at the time of the loan or intended to deceive Strategy. That is the definition of futile. In *Sherwin Pipeline, Inc. v. Sherwin Alumina Co.*, the Fifth Circuit affirmed a dismissal with prejudice where "[i]t would be futile to allow an amendment to the Complaint because there are no facts that could be plead[ed] to support' the claim." 952 F.3d 229, 236 (5th Cir. 2020). The Court explained, "This determination was no abuse of discretion. The Port's fraud claim is premised on an alleged misrepresentation made by Sherwin's counsel regarding modifications. The bankruptcy court determined the Port could plead no additional fact to salvage this claim." *Id.*

Here, as in *Sherwin Pipeline*, repleading would not alter the outcome because the transaction is wholly understood, meaning that repleading would simply rehash the same facts to invite the same outcome—the hallmark of futility. Accordingly, I find no abuse of discretion in the Bankruptcy Court's dismissal with prejudice.

## IV. CONCLUSION

I will affirm the Dismissal Order for the reasons set forth herein. A separate order will be entered.